# UNITED STATES DISTRICT COURT
## District of Kansas

UNITED STATES OF AMERICA,

Plaintiff,

v. CASE NO. 26-20077-HLT/JBW

BISAAM GHAFOOR,
BAREEN DZAYEE,
and
ELIAS SHAMSLADEEN,

Defendants.

## GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

APPEAR NOW the United States of America, by and through undersigned counsel, and respectfully requests the Court enter a protective order to govern discovery in this case pursuant to Federal Rules of Criminal Procedure 16(d)(1).

Specifically, the government requests that the Court enter the proposed protective order governing the use and dissemination of the following: (1) personal identifying information ("PII") of real persons; (2) material that may

contain information within the scope of the Privacy Act; and (3) information related to confidential human source(s), undercover employee(s), and/or cooperating witness(es) who may testify at trial.

Defendant Bisaam Ghafoor, through counsel Laquisha Ross, does not oppose the requested protective order.

Defendant Bareen Dzayee, through counsel Nicholas De Pento and Branden Smith, does not oppose the requested protective order.

Defendant Elias Shamsaldeen, through counsel Lance Sandage, does not oppose the requested protective order.

## I. INTRODUCTION AND GROUNDS FOR PROTECTIVE ORDER

### A. **Legal Standard**

Federal Rule of Criminal Procedure 16(d)(1) provides: "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Upon request and proper showing by either party, the Court's broad discretion includes allowing non-disclosure or placing limitations on the use or "unwanted disclosure" of materials in the discovery process. *See Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which

they may be entitled to inspect"). When considering whether to restrict discovery, "among the considerations to be taken into account by the court will be the safety of witnesses and others," as well as the "particular danger of perjury or witness intimidation." *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (internal quotation marks, citation, and alterations omitted).

B. **Good cause to restrict dissemination and distribution**

A protective order is necessary because the government intends to produce to the defense materials regarding confidential human source(s) ("CHS"), an undercover employee and/or online covert employee ("OCE"), or a cooperating witness such as a "tipster," who participated in the government's investigation and who may testify at trial (collectively referred to as "Undercover Witnesses"). Because these materials could be used to identify the Undercover Witnesses, the government believes that the unauthorized dissemination or distribution of the materials may compromise the ability of such persons to participate effectively in future investigations in an undercover capacity and/or may expose him/her to potential safety risks.

A protective order is also necessary because the government intends to produce to the defense materials containing third parties' PII. For example, the government intends to provide copies of seized data from the defendants'

electronic devices. It is reasonable to expect those materials will contain the defendants' and other individuals' PII, financial information, and other personal information.

The government believes that disclosure of this information without limitation risks the privacy and security of the information's legitimate owners. Because the government has an ongoing obligation to protect third parties' PII, the government cannot produce an unredacted set of discovery containing this information without the Court entering such a protective order. Redacting all such PII from the materials could pose challenges for defense counsel to adequately evaluate the case, provide advice to the defendants, or prepare for trial.

An order is also necessary because the government intends to produce to the defense materials that may contain information within the scope of the Privacy Act, 5 U.S.C. § 552a ("Privacy Act Information"). To the extent that these materials contain Privacy Act Information, an order is necessary to authorize disclosure pursuant to 5 U.S.C. § 552a(b)(12).

The purpose of the proposed protective order is to allow the government to comply with its discovery obligations while protecting confidential information from unauthorized dissemination and to provide defense counsel

with sufficient information to represent the defendants.

### C. Artificial Intelligence

Inputting confidential information into Artificial Intelligence ("AI") systems can carry significant risks of data misuse and unauthorized disclosure.[1] The architecture of these systems, particularly generative AI's reliance on vast amounts of information to function effectively, introduces a distinctly new category of risk: the models themselves can memorize and subsequently reproduce confidential information. This poses a particular security risk in the context of data shared under a protective order. For example, researchers have been able to extract copywritten text from commercially available AI models,[2] and have shown that LLMs in the medical context can memorize and reproduce sensitive patient data.[3]

These risks can vary meaningfully depending on the AI system used and contractual protections in place between the user and provider of the AI system.

---

[1] *See, e.g.*, National Institute of Standards and Technology, Trustworthy and Responsible AI, *Artificial Intelligence Risk Management Framework: Generative Artificial Intelligence Profile*, 7, (Jul. 2024), https://doi.org/10.6028/NIST.AI.600-1; *OWASP GenAI Data Security: Risks and Mitigations 2026*, 6, (Mar. 2026) ("A core GenAI reality is that sensitive content can leak verbatim or near-verbatim . . ."), https://genai.owasp.org/resource/owasp-genai-data-security-risks-mitigations-2026/.

[2] Ahmed Ahmed et al., *Extracting Books from Production Language Models*, arXiv (Jan. 6, 2026), https://doi.org/10.48550/arXiv.2601.02671.

[3] Alex Ouyang, *MIT Scientists Investigate Memorization Risk in the Age of Clinical AI*, Mass. Inst. of Tech. (Jan. 5, 2026), https://news.mit.edu/2026/mit-scientists-investigate-memorization-risk-clinical-ai-0105.

For example, providers of cloud-based, consumer-facing AI systems commonly retain user input and user-uploaded data to improve and train their AI products.[4] These risks are not entirely assuaged by limiting the use of consumer-tier systems.

In the legal context, these and other risks have led some courts to approve protective orders that limit the information parties can give to particular LLMs and other AI-systems.[5]

Because of the nature of the information within the Discovery Materials, defense counsel *must provide notice to, and receive consent from*, the government before entering Discovery Materials into any AI tool.

The use of AI tools, particularly "data-retentive" or "consumer-tier" AI tools that allow publicly accessible AI systems to retain and use submitted data to train models, poses a threat to the integrity and security of data produced in litigation. The terms of this protective order explicitly set forth a complete moratorium on the use of such AI tools.

---

[4] *See, e.g.*, OpenAI, *US Privacy Policy*, OpenAI (May 18, 2026), https://openai.com/policies/privacy-policy/; X.AI LLC, *xAI Privacy Policy*, xAI (Apr. 4, 2026), https://x.ai/legal/privacy-policy; Anthropic PBC, *How Long Do You Store My Data*, Anthropic (Mar. 16, 2026), https://privacy.claude.com/en/articles/10023548-how-long-do-you-store-my-data.

[5] *See, e.g., Morgan v. V2X, Inc.*, No. 25–CV–01991–SKC–MDB, 2026 WL 864223 (D. Colo. Mar. 30, 2026); *Orechovsky v. BNY Administrative Services, LLC*, No. 1:25-CV-08517-MMG, 2026 WL 1725149, at *3 (S.D.N.Y. June 15, 2026); *United States v. Hoskins*, No. 24 CR 454-2, 2026 WL 1493698, at *2 (N.D. Ill. May 28, 2026).

The language of the order is meant to cover four main areas of concern.

- The AI system will not be trained on any Discovery Materials.
- The AI system will not expose the confidential information to any unauthorized individual.
- The defense team has taken reasonable measures to ensure confidentiality of all Discovery Materials reviewed/used/processed by an AI system.
- The defense team can and will delete all Discovery Materials from any AI system they use.

## II. DEFINITIONS

"Parties" are the government's prosecutors, the individual defendants, and the defendants' respective counsel of record.

"Discovery Materials" includes all reports, notes, recordings, data, spreadsheets, etc. provided as discovery in this case to defense counsel. All "Discovery Materials" are subject to the Protective Order, whether it contains "Confidential Information" or not.

"Undercover Witness Materials" includes any information relating to a CHS, OCE, or tipster's prior history of cooperation with law enforcement,

criminal history, statements, or any information that could be used to identify the Undercover Witness such as a name, actual name, cover name, alias, identifier, online account name, username, image, address, date of birth, unique personal identification number, account number, telephone number, descriptors, photographs, audio recordings, or video recordings.

"PII Material" includes any information that can be used to identify a person such as a name, address, date of birth, social security number, driver's license number, telephone number, account number, email address, username, or personal identification number.

"Confidential Information" refers to any document or information containing Undercover Witness Materials or PII Materials that the government produces to the defense in this case and any copies thereof.

"Defense Team" includes the following: (1) each defendant's counsel of record ("defense counsel"); (2) other attorneys at defense counsel's law firm who may be consulted regarding case strategy in this case; (3) defense investigators who are assisting defense counsel with this case; (4) retained experts or potential experts; and (5) paralegals, legal assistants, and other support staff to defense counsel who are providing assistance on this case. The Defense Team does not include a defendant, a defendant's family members, or any other associates of a

defendant.

"AI tool" means any automated system that uses statistical modeling, machine learning, or similar techniques to process inputs and generate outputs, recommendations, or predictions, including but not limited to large language models, generative AI services, or AI-assisted software tools, whether cloud-based or otherwise.

## III. PROCEDURAL HISTORY

On June 4, 2026, the Defendants were charged in a criminal complaint with a single count of conspiracy to provide material support to the Islamic State of Iraq and al-Sham ("ISIS"), which is a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. (Doc. 1, Complaint.)

On June 11, 2026, the court in the Southern District of California ordered Mr. Dzayee detained pending trial. (Doc. 21, Detention Order.)

On June 12, 2026, the court ordered Mr. Ghafoor detained pending trial. (Doc. 11, Order of Detention.)

On June 12, 2026, the court in the Eastern District of California ordered Mr. Shamsaldeen released on conditions. *See United States v. Shamsaldeen*, E.D. Cal. Case No. 26-mj-68, Doc. 8, Minutes. On June 15, 2026, this court entered an order staying the release of Mr. Shamsaldeen. (Doc. 15, Order.) On July

22, 2026, this court ordered Mr. Shamsaldeen detained pending trial. (Doc. 43, Minutes.)

On July 1, 2026, the grand jury returned a true bill charging the Defendants with the same crime as was in the complaint. (Doc. 23, Indictment.)

On July 6, 2026, the court conducted an arraignment for Mr. Ghafoor. (Doc. 28, Minutes.)

On July 10, 2026, the court conducted an arraignment for Mr. Shamsaldeen. (Doc. 35, Minutes.)

On July 13, 2026, the court conducted an arraignment for Mr. Dzayee. (Doc. 37, Minutes.)

A status conference for the case is scheduled for November 17, 2026. (Doc. 52, Minutes.)

## IV. FACTUAL BACKGROUND

As explained in the Criminal Complaint, witnesses in this case include Undercover Witnesses. The discovery for this case includes communications between the defendants and the CHS, the OCEs, and/or the tipster. These Undercover Witnesses recorded or otherwise memorialized their communications with the defendants, whether in-person, via chat programs, via

audio, or via audio and video. (The discovery includes approximately 300 hours of recorded conversations with the defendants.)

These Undercover Witnesses continue to work in undercover capacities that may include national security investigations. Protective measures are necessary to prevent jeopardizing ongoing investigations and future national security investigations, as well as to protect these Undercover Witnesses and their families.

The defendants' online statements and communications constitute some of the more powerful evidence supporting the charge against them. Many of these communications occurred in online social media and encrypted communications platforms as direct messages or in group chats. The Undercover Witnesses saw and/or heard these online communications, which the Undercover Witnesses captured as discovery for this case.

Undercover Witnesses are necessary individuals in the FBI's ongoing mission to detect, prevent, and prosecute national security cases. Just as courts across jurisdictions have long held that narrowly tailored security measures for testifying in court are justified by compelling government interests that do not violate the Sixth Amendment rights of a defendant, those compelling government interests support protective measures with the dissemination of

discovery. *See e.g., Waller v. Georgia*, 467 U.S. 39, 45-46 (1984) ("[T]he right to an open trial may give way in certain cases to other rights or interests, such as the Defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information."); *United States v. Sherlock*, 962 F.2d 1349, 1356 (9th Cir. 1989) ("Federal courts have recognized limitations on [the right to a public trial] where a judge has excluded spectators during a witness's testimony for a justifiable purpose."); *United States v. Yazzie*, 743 F.3d 1278, 1288 n. 4 (9th Cir. 2014) ("Partial closure of a courtroom has a reduced impact on a defendant's rights.").

Because "[t]he government has a substantial interest in protecting sensitive sources and methods of gathering information," *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985), courts routinely grant protective orders restricting defendants' access to sensitive information and investigative techniques, even when they are not classified. *See United States v. Alimehmeti*, 284 F. Supp. 3d 477, 494–95 (S.D.N.Y. 2018) (permitting "general inquiry to the nature of the work and objectives of a UC [undercover officer]," but excluding "examination into the specifics of the [] UCs' training and experience."); *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D.VA 2002) (granting protective order prohibiting the public dissemination of unclassified

but sensitive material to prevent members of international terrorist organizations from learning government investigative techniques from publicly available sources); *see also United States v. Longueuil*, 567 F. App'x 13, 16 (2d Cir. 2014) (enforcing protective order sealing documents containing sensitive information about the government's investigative methods and techniques); *United States v. Van Horn*, 789 F.2d 1492, 1507-08 (11th Cir. 1986) (applying law enforcement privilege to block access to information concerning the location and nature of secret surveillance equipment); *United States v. Johnson*, 191 F. Supp. 3d 363, 370 (M.D. Pa. 2016) (granting government request for protective order covering sensitive investigative techniques because "files are rightly shielded from public access where they reveal specific details of surveillance techniques, including equipment used and location and timing of use, the revelation of which could compromise the agency's ability to conduct future investigations").

Accordingly, the government requests the Court employ its wide discretion to safeguard critical techniques for ongoing and future national security investigations under Fed. R. Crim. P. 16(d)(1).

V. <u>PROTECTIVE MEASURES SOUGHT</u>

Based on the need to protect the Undercover Witnesses' true identities and physical characteristics from disclosure, and the need to protect other

investigations, the government requests that the Court adopt these protective measures to govern discovery. (The government anticipates submitting other proposed protective measures in preparation for trial in this case.)

- No person or entity authorized to have access to the discovery materials shall input, transmit, upload, process, generate output from, or otherwise expose any Discovery Materials to any AI tool without prior written consent from the government. To obtain authorization for the otherwise prohibited use of an AI tool, defense counsel must submit a written request to the government. In any request for written authorization, defense counsel must specifically identify and describe any AI tool to be used and certify that it does not (i) retain or use any Discovery Materials for model training, nor (ii) expose any Confidential Information to third parties not authorized under this Protective Order to receive such materials. In addition, defense counsel must certify that (i) defense counsel has implemented reasonable measures to ensure that any AI tool used will maintain the confidentiality of any Discovery Materials, and (ii) defense counsel will ensure the deletion of all Discovery Materials from the tool at the conclusion of this case. Defense

counsel will be responsible for destroying such information at that time. Under no circumstances will any member of the defense team submit Discovery Materials to a publicly accessible AI system that retains and uses submitted data to train models. Such AI tools pose unique risks to the security and integrity of Discovery Materials, given the practical inability to claw back or delete data once it has been incorporated into a model.

- The true identities of the Undercover Witnesses be disguised or redacted in the discovery, including any numbers utilized by the FBI that are assigned to the Undercover Witnesses.
- The aliases, online monikers, and personas of the Undercover Witnesses be redacted in the discovery.
- Allow the digital obscurity of the facial image of the Undercover Witnesses on any video recordings.
- No defendant shall be permitted to make any notes or other record of PII.
- Neither a Defense Team nor a defendant may publish or disseminate Discovery Materials, discovery documents, or the

information contained within any of the discovery, including the identity and PII of witnesses.

- The Parties will not disclose, publicly or in any pretrial filing or at any pretrial hearing any Confidential Information unless permitted by the procedures within the protective order.
- The audio and video recordings that include Undercover Witness Materials may only be reviewed by the Defense Teams and the defendants within space made available by the United States Attorney's Office for the District of Kansas.
- The parties may use the Confidential Information only for purposes of this litigation and may only disclose Confidential Information in accord with the procedures set forth in the protective order.
- The defendants may review Confidential Information in the presence of a member of their Defense Team. A defendant's counsel of record must ensure a defendant is never left alone with any Confidential Information. The defendants may see and review Confidential Information but a defendant may not copy, keep, maintain, or otherwise possess any Confidential Information in this

case at any time. A defendant must return any Confidential Information to the Defense Team at the conclusion of any meeting at which the defendant is permitted to view the Confidential Information. A defendant may not remove any Confidential Information from the room in which the defendant is meeting with his Defense Team. A defendant may not write down or memorialize any Confidential Information. At the conclusion of any meeting with a defendant, a member of the Defense Team present must take or return all Confidential Information. At no time and under no circumstance will any Confidential Information be left in the possession, custody, or control of a defendant, whether the defendant is incarcerated or not.

- Defense counsel may provide Confidential Information to members of the Defense Team, but only after defense counsel provided that member of the Defense Team a copy of the protective order. Each member of the Defense Team must sign an Acknowledgement that he/she has reviewed the protective order and agrees to be bound by its terms and consents to the jurisdiction of this Court for the purpose of any proceedings relating to the

performance under, compliance with, or violation of the protective order.

- The Defense Team may only use the Confidential Information for the purpose of litigating this criminal case, including any appeal.
- Defense counsel must maintain a list of persons to whom Confidential Information is disclosed and retain a copy of the Acknowledgement signed by all persons receiving Confidential Information.
- The parties may use the Confidential Information during their investigation of the allegations, litigation, or introduction as evidence at trial, except that any documents, papers, or pleadings filed with the Court that do the following: (1) quote directly from Confidential Information; (2) summarize or refer to the contents of Confidential Information; (3) attach copies of Confidential Information; or (4) in any other way use Confidential Information, shall be filed under seal. However, if the parties agree to the public filing of the Confidential Information or all Confidential Information is redacted, then it need not be filed under seal. The

procedures for use of Confidential Information designated by either party for use in Court during any hearing or trial of this case must be determined by the parties and the Court in advance of the hearing or trial. No party may disclose in open court Confidential Information without prior consideration by the Court.

- Defense counsel must maintain all Confidential Information in a secure and safe area and must exercise the same standards of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as exercised for his/her own confidential information.

- In addition to the protections listed above regarding Confidential Information, the following further protections specifically apply to Undercover Witness Materials.

    - The parties will not publicly disclose the actual or cover name, identifier, or online account name of any Undercover Witness or any other information that could lead to the identity of an Undercover Witness, including photographs, audio recordings, or video recordings in any pretrial filing or at any pretrial hearing in open court.

  - No one other than the defense counsel may maintain Undercover Witness Material.
  - Undercover Witness Material will be used solely for the purpose of allowing the Defense Team to prepare a defense and for no other purpose.

- Within 90 days of any final judgment in this case by the later of the sentencing of a defendant, a defendant's appeal, or dismissal of the indictment with or without prejudice; or within 90 days of the termination of a particular defendant's counsel's representation, defendant's counsel shall return to the United States all Undercover Witness Materials in which an Undercover Witness can be seen, heard, or is discussed in terms that could lead to the revealing the identity of the Undercover Witness, and any copies. Defendants' counsel must return to the United States all Confidential Information and all copies, including any derivative discovery materials (e.g. verbatim transcripts of recordings or transcripts), or must destroy them and certify in writing to counsel for the United States that the materials have been destroyed. Defense counsel reserves the right to petition this Court for an extension of this 90-

day period as needed. Defense counsel may maintain work product containing Confidential Information subject to the requirements of the protective order for ten years following the entry of final judgment and must thereafter destroy any and all such work product.

- Any failure to designate materials as Confidential Information does not constitute a waiver of a party's assertion that the materials are covered by the protective order.
- The protective order does not prevent any party from objecting to discovery that it believes to be otherwise improper. The protective order does not constitute a ruling on the question of whether any particular material is properly discoverable or admissible and does not constitute a ruling on any potential objection to the discoverability or admissibility of any material.
- Should any Confidential Information be improperly disclosed by a member of a Defense Team or a non-Defense Team member authorized to be in receipt of the Confidential Information, then defense counsel must use his or her best efforts to obtain the return of any such Confidential Information and to bind the recipient of

Confidential Information to the terms of the protective order and must, within ten business days of the discovery of such disclosure, inform the Court and the United States of the unauthorized disclosure and identify the circumstances.

- Fed. R. Crim. P. 16(d)(2) provides sanctions for failing to comply with the Court's Order that are just under the circumstances. Both parties must use their best efforts to confer with the opposite parties regarding the protective order before seeking relief from the Court, and neither party may seek to have the Court impose sanctions under this Rule without providing notice to the other party at least five business days in advance.

- Nothing in the protective order may prevent any party from seeking modification of the protective order. The party seeking modification must first discuss any proposed modifications with opposing counsel and attempt to reach resolution before seeking a modification from this Court.

- All Confidential Information that may be provided as part of the discovery materials in this case is now and will forever remain the property of the United States.

- The protective order shall survive the termination of this case and will continue in full force and effect thereafter.

IV. CONCLUSION

For the foregoing reasons, the government respectfully moves this Court to grant the proposed Protective Order.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

By: s/Scott C. Rask
Scott C. Rask
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (fax)
Scott.Rask@usdoj.gov
Kan. S. Ct. No. 15643

**CERTIFICATE OF SERVICE**

I certify that on September 15, 2026, I electronically filed this Motion with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to those attorneys who have entered their appearance in the

matter.

By: s/Scott C. Rask
Scott C. Rask, #15643
Assistant United States Attorney